GALVIN KENNEDY, Plaintiff-Appellant, v. BARBARA MILLER *et al.*, Defendants-Appellees.

Second District   No. 2—88—0196

Opinion filed August 30, 1988.

William E. Jegen, P.C., of Glen Ellyn (William E. Jegen, of counsel), for appellant.

Douglas Drenk, of Drenk & Drenk, Ltd., of Wheaton (David Drenk, of counsel), for appellees Barbara Miller, Laurence B. Miller, and Williamsburg West, Inc.

JUSTICE NASH delivered the opinion of the court:

Plaintiff, Galvin Kennedy, appeals from the denial of his petition for appointment of a receiver. Kennedy initially brought this action against defendants Barbara and Laurence Miller, seeking a judgment for amounts allegedly due him from a joint venture he had undertaken with the Millers. The trial court found that a joint venture existed between the parties and ordered an accounting of joint venture assets. Ultimately, a summary judgment was entered in favor of Kennedy awarding him $194,204. The Millers appealed and posted an appeal bond to stay execution of the judgment. (107 Ill. 2d R. 305.) The bond was in the form of cash deposited by defendants in an interest-bearing bank account. On that appeal, this court affirmed the circuit court's findings that there was a joint venture between the parties and that Kennedy was entitled to an accounting; however, the summary judgment in favor of Kennedy was reversed, and the cause was remanded with directions that the Millers be granted a new trial of the accounting issues and Kennedy's right to profits. *Kennedy v. Miller* (1987), 156 Ill. App. 3d 1171 (unpublished Rule 23 order).

After our mandate in the first appeal was filed in the trial court, Kennedy petitioned the court for the appointment of a receiver to take custody of the cash which comprised the appeal bond. The petition, which was supported by numerous exhibits and affidavits, alleged that the funds held as the appeal bond represented the profits of the joint venture, that as a joint venturer, Kennedy had an interest in the funds, and that a receiver was necessary because the cash would be in imminent danger of loss if it was released to the Millers due to the Millers' alleged potential insolvency and financial difficulties. Hearing on the petition consisted solely of arguments of counsel, and no testimony or other evidence was offered. The trial court denied the petition and allowed the release of the appeal bond money to the Millers.

Kennedy brings this interlocutory appeal pursuant to Supreme Court Rule 307(a)(2) (107 Ill. 2d R. 307(a)(2)), which provides for appeals from an order refusing to appoint a receiver, and he also filed a motion in this court to stay the trial court's order allowing the release

of the appeal bond funds. That motion was denied for Kennedy's failure to post a required appeal bond, and according to the parties' briefs, the cash appeal bond was released to the Millers shortly thereafter.

Kennedy contends that the trial court abused its discretion in refusing to appoint a receiver since, under the circumstances of this case, the requirements for such an appointment were met. The Millers respond that the trial court acted properly because the cash deposited as the appeal bond was not shown to be an asset of the joint venture, and did not represent such an asset, and thus could not properly be placed in the custody of a receiver. We conclude that the appeal must be dismissed.

■■ In our view the matter pursued here by Kennedy is moot. A case may become moot when, during the pendency of an appeal, events occur which make it impossible for a reviewing court to grant effective relief to a party. (*In re Marriage of Holem* (1987), 153 Ill. App. 3d 1095, 1098, 506 N.E.2d 739; *Bundy v. Church League of America* (1984), 125 Ill. App. 3d 800, 803, 466 N.E.2d 681.) Changed circumstances, such as occurrences that prevent a reviewing court from granting plaintiff the relief he originally sought, also may render an issue on appeal moot. (*Schnepper v. American Information Technologies, Inc.* (1985), 136 Ill. App. 3d 678, 681, 483 N.E.2d 987.) Because of the events which followed the filing of notice of appeal, the relief sought by Kennedy in this case can no longer be granted.

Kennedy's petition in the circuit court requested that the money deposited as the Millers' appeal bond in the first appeal from the judgment against them be placed in the custody of a court-appointed receiver. The petition was denied, and, despite Kennedy's efforts to the contrary, that money was released to the Millers, and the fund Kennedy sought to place in the hands of a receiver no longer exists. The circumstances of this case have changed in that the appeal bond fund is not available, and it is, therefore, impossible for us to grant the relief Kennedy requested in his petition. Under these circumstances the issue is moot (*Schnepper*, 136 Ill. App. 3d at 681), and the appeal must be dismissed.

In his brief, Kennedy also asks us to reverse and remand this cause with instructions that the trial court appoint a receiver and "to order the Millers to deposit [a sum] with the receiver pending retrial." However, this is not the same as the relief originally requested by Kennedy, responded to by the Millers, and ruled upon by the trial court and will not be considered here.

■■ Even if this case were not moot, Kennedy was not entitled

to the relief he sought. While appointment of a receiver is within the discretion of the trial court (*Leib v. Toulin, Inc.* (1983), 113 Ill. App. 3d 707, 718, 447 N.E.2d 900), it is an extraordinary and drastic remedy which is in derogation of the fundamental rights of the owner to possession of his property (*Citicorp Savings v. Occhipinti* (1985), 136 Ill. App. 3d 835, 840, 483 N.E.2d 706). The power to appoint a receiver should be exercised only when the court is satisfied that receivership is necessary to circumvent the imminent danger of loss. (136 Ill. App. 3d at 840.) The facts that were before the trial court in this case did not warrant appointment of a receiver.

The requirements for appointment of a receiver were noted in *Bagdonas v. Liberty Land & Investment Co.* (1923), 309 Ill. 103, 110, as follows:

> "The general rule is that the applicant must show, first, that he has a clear right to the property itself or has some lien upon it, or that the property constitutes a *special fund to which he has a right to resort* for the satisfaction of his claim; and second, that the possession of the property by the defendant was obtained by fraud, or that the property itself, or the income arising from it, is in danger of loss from neglect, waste, misconduct or insolvency." (Emphasis added.)

The rule of *Bagdonas* has not changed. (See *Citicorp Savings*, 136 Ill. App. 3d at 840, 483 N.E.2d 706; *W. E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.* (1983), 112 Ill. App. 3d 847, 850, 445 N.E.2d 1209.) In the present case, Kennedy did not show that he had a right to seek satisfaction of any judgment he might secure from the Millers' appeal bond money.

Kennedy argues that, in light of the fact that he was found by this court to be a joint venturer, he has a legally enforceable interest in the assets and capital of the joint venture. He asserts that the cash appeal bond posted by the Millers represents the profits of the joint venture and, therefore, constitutes a "special fund" to which he can look for the satisfaction of his claim. While we do not disagree that a joint venturer has a legitimate interest in the assets of the joint venture, we are not persuaded from the evidence that the fund Kennedy sought to place in the hands of a receiver was made up of such assets.

We can find nothing in the record, and Kennedy does not direct us to any evidence, to show that the appeal bond money was connected with the joint venture, either as profit or in any other way. No suggestion was made as to the source of the money posted by the Millers, nor was any attempt made to trace the money from the joint venture to the appeal bond. On the contrary, counsel for Kennedy

made it very clear at the hearing on the petition that he was asking the court to arbitrarily disburse at least a portion of the appeal bond either to a receiver or into a previously existing escrow account to replace joint venture profits which had allegedly been improperly released to the Millers. When the court asked if counsel contended that the improperly released dollars were the same dollars that were posted as bond by the Millers, counsel responded only that "dollars are a fungible commodity." He insisted that the funds released to the Millers had been commingled with the Millers' own money and that the appeal bond was, therefore, a legitimate source from which to replace the improperly released funds. Thus, it appears that Kennedy could not establish a factual link between the assets of the joint venture and the Millers' cash appeal bond. Absent a showing that the money was the property of the joint venture, Kennedy could not show that it was money in which he had an enforceable interest or that it was a special fund to which he could turn as a matter of right for satisfaction of his claim. (*Bagdonas*, 309 Ill. at 110.) It follows that, since he had no interest in it in the first place, Kennedy's fear of the danger of imminent loss of the cash was unwarranted.

Kennedy has also contended that the conditions of the bond posted by the Millers to stay the judgment of the trial court during the first appeal are still in effect and that defendants' appeal bond obligation continues, although now without adequate security as the trial court erroneously released the bond funds. We do not agree.

Supreme Court Rule 305(d) regulates the stay of a judgment pending appeal and provides:

> "If an appeal is from a judgment for money, the condition of the bond shall be for the prosecution of the appeal and the payment of the judgment, interest, damages, and costs in case the judgment is affirmed or the appeal dismissed ***." (107 Ill. 2d R. 305(d).)

The appeal bond form executed by the defendants and approved by the court in the present case was conditioned as follows:

> "NOW, IF THE SAID Defendants shall duly prosecute said appeal, and shall moreover pay the amount of the said judgment, costs, interest and damages, rendered and to be rendered against defendants the said Defendants in the case the said Judgment shall be affirmed in the Appellate Court, then the obligation to be null and void, otherwise to remain in full force and effect."

Kennedy argues that the order of this court on August 11, 1987, in the first appeal, affirmed the decisions of the trial court, which found

that there was a joint venture between the parties and that Kennedy was entitled to an accounting. He notes that this court also reversed the summary judgment which had awarded Kennedy $194,204 as his share of joint venture profits and remanded the cause for a trial of the issues relating to the accounting and Kennedy's entitlement to profits. He asserts that under our mandate after the first appeal a judgment may be entered against defendants in those further proceedings and concludes that the terms of the appeal bond extend to both judgments rendered and *to be rendered* against defendants. Kennedy relies upon *Alton Brick Co. v. Alton Water Co.* (1963), 42 Ill. App. 2d 451, 192 N.E.2d 599, and also cites *Clark v. Selfridge* (1916), 274 Ill. 275, 113 N.E. 617, and *Foster v. Epps* (1888), 27 Ill. App. 235, 238, cases noted by the *Alton* court.

The cases upon which Kennedy relies do not support his argument that defendants in the present case remained liable under their appeal bond even though the original money judgment against defendants was reversed. In *Alton Brick Co.* the trial court's judgment which defendant there appealed was *affirmed* in all respects. The reviewing court subsequently rejected defendant's argument that it was not liable on the appeal bond posted to stay enforcement of the appealed judgment because it had been remanded for further proceedings and was thus not a final order implementing the appeal bond. *Alton Brick Co.*, 42 Ill. App. 2d at 460.

While not cited by either party, the courts have considered and resolved the meaning of the term "rendered and to be rendered" commonly used in an appeal bond, although not required by Supreme Court Rule 305(d) (107 Ill. 2d R. 305(d)). In *Rothgerber v. Wonderly* (1872), 66 Ill. 390, the court stated that "[t]he legal effect of the words 'rendered and to be rendered,' contained in the appeal bond, is, that the appellant shall pay the judgment theretofore rendered against him in the court below, and such judgment as shall be rendered by the Supreme Court in case the judgment shall be affirmed." (66 Ill. at 393.) In *Rothgerber*, a money judgment entered in the trial court was, on appeal, reversed and the cause remanded with directions that a judgment for a lesser sum be entered. It was determined that the appellant was not liable on his appeal bond for the judgment which was reversed, and that he could not be so liable for a judgment entered after remand, whether rendered after trial *de novo* or under the mandate of the reviewing court. (See *Cigler v. Keinath* (1914), 265 Ill. 144, 106 N.E. 629; *Finley v. Crossley* (1961), 33 Ill. App. 2d 212, 178 N.E.2d 684.) As the money judgment in favor of Kennedy was reversed in the first appeal of this case, defendants are not there-

after liable on their appeal bond for satisfaction of the reversed judgment or any new judgment which may be entered against them on retrial.

Accordingly, the appeal is dismissed as moot.

Dismissed.

INGLIS and DUNN, JJ., concur.